## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| TIMOTHY MITCHELL, | **Case No.:** |
| Plaintiff, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| EXPERIAN INFORMATION SOLUTIONS, INC., | **1.  FCRA, 15 U.S.C. § 1681** *et seq.* |
| Defendant. | |

Plaintiff Timothy Mitchell, ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant Experian Information Solutions, Inc. ("Experian").

## I.      INTRODUCTION

1.      Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by the Defendant.  Plaintiff contends Defendant failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff.  "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by

1

Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## II.    JURISDICTION AND VENUE

2.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.      Venue in the Northern District of Georgia is proper pursuant to 28 U.S.C. § 1391 because Defendant regularly transacts business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## III.    PARTIES

4.      Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

5.      Plaintiff is a natural person who resides in the city of Fairburn in Fulton County, Georgia.

6.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

2

7.     Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)).  On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

8.     During all times pertinent to this Complaint, Defendant was authorized to conduct business in the State of Georgia and conducted business in the State of Georgia on a routine and systematic basis.

9.     Defendant regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC § 1681a(d), to third parties. Defendant regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" as defined by 15 U.S.C. § 1681a(f) of the FCRA.

10.     During all times pertinent to this Complaint, Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

11.    Any violations by Defendant were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

## IV.    FACTUAL BACKGROUND

12.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

13.    The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

14.    Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

15.    The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

16.    Defendant, one of the three major consumer reporting agencies (at times referred to collectively as "CRAs" and individually as a "CRA"), in the United States, regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports.

17.    Defendant obtains consumer information from various sources. Some consumer information is sent directly to Defendant by furnishers, and other information is independently gathered by Defendant from third party providers, vendors or repositories, like computerized reporting services like PACER.

18.    Defendant regularly obtains consumer bankruptcy information to include in consumer reports.

19.    The diligence Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in Defendant's subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

20.    Defendant's consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically

includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

21.    The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, date of delinquencies contained in Defendant's reports.

22.    The information Defendant includes in consumer reports contributes to a consumer's overall creditworthiness and determines their FICO Score(s).

23.    FICO and other third-party algorithms use variables or "attributes" derived from a consumer report to calculate a person's "credit score," which is a direct reflection of their creditworthiness.

24.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

      a.  "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

      b.  The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

25.     Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by Defendant in its consumer reports.  DTI compares the total amount a consumer owes to the total amount a consumer earns.

26.     A consumer's income, however, is not included in their consumer report; only their amount of debt is.

27.     Lenders consider a consumer's DTI when deciding whether to approve financing and the credit terms thereof.

28.     The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms (e.g., higher interest, lower credit limits).

29.     A consumer who has obtained a bankruptcy discharge and has a consumer report that is inaccurately reporting outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting as having a zero-dollar balance.

30.     Defendant is well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding court, are discharged; both such exceptions are rare and furthermore identified on the individual consumer's bankruptcy docket sheet.

31.     Additionally, information indicating that a specific debt has not been discharged, but instead was reaffirmed or successfully challenged through an

adversary proceeding, is retrieved from the same sources from which Defendant independently obtains consumer bankruptcy case information.

32.     Defendant also receives information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

33.     However, Defendant regularly reports inaccurate information about consumers after they receive a Discharge Order.

34.     Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, Defendant frequently reports information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

35.     Defendant regularly publishes consumer information that conflicts with information: provided by data furnishers to Defendant, already included in Defendant's credit files, contained in public records that Defendant regularly accesses, and/or sourced through Defendant's independent and voluntary efforts.

36.     Defendant's unreasonable policies and procedures cause it to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 7 Bankruptcy.

37.    Defendant routinely reports inaccurate, and materially misleading information about consumers like Plaintiff, without verifying or updating the information as required by § 1681(e)(b), despite possessing information inconsistent with the reported information that establishes the reported information is inaccurate.

38.    Defendant's unreasonable policies and procedures cause it to regularly report consumer information without verifying its accuracy.

39.    Defendant's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

40.    Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in Defendant's own files.

41.    Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendant for its inaccurate credit reporting following a Chapter 7 discharge.

42.    Thus, Defendant is on continued notice of its inadequate post-bankruptcy reporting procedures, which cause Defendant to report inaccurate balances, account statuses, payment histories, and/or payment statuses.

*Allegations Specific to the Credit Reporting of Plaintiff*

43.     Plaintiff filed a "no asset" Chapter 7 Bankruptcy on or about February 2, 2021, in the United States Bankruptcy Court for the Northern District of Georgia, petition number 21-50927-jwc.

44.     Plaintiff received an Order of Discharge on or about May 24, 2021.

45.     Thereafter, Plaintiff was not personally liable for the dischargeable debts. All dischargeable debts carried zero-dollar balances after the bankruptcy discharge.

46.     Defendant prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

47.     In Plaintiff's consumer reports, Defendant included the bankruptcy case number, court, filing date and the fact that Plaintiff's bankruptcy had been discharged in the Public Records section of Plaintiff's consumer report.

48.     Defendant also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

49.     Defendant obtained notice of Plaintiff's bankruptcy discharge through its routine, independent collection of consumer information from third-party

11

vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by Defendant in Plaintiff's consumer reports.

50.    Defendant is aware that CRAs are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

51.    Defendant should have reported **all** of Plaintiff's dischargeable, pre-petition debt as included in or discharged in Chapter 7 Bankruptcy, and/or with a zero-dollar balance but did not.

52.    Defendant inaccurately reported Plaintiff's Comenity Bank/HSN Account (the "Account"), starting with 57809 and opened in May 2011, which predated Plaintiff's bankruptcy filing.

53.    The Account was included in Plaintiff's bankruptcy and discharged on or about May 24, 2021.  Therefore, the Account should have been reported as discharged in bankruptcy, and/or with a zero-dollar balance.

54.    However, Experian inaccurately reported the discharged Account as a "Charge-Off" account with an owed and past due balance of $3,289.

55.    Experian did not indicate that the Account was discharged in bankruptcy or report the Account with a zero-dollar balance, despite reporting Plaintiff's bankruptcy in the public records section of Plaintiff's consumer report and reporting other pre-bankruptcy accounts as "Discharged/Included in Bankruptcy Chapter 7," and/or with zero-dollar balances.

56.    The status of "Charge-Off" in the consumer credit reporting industry means that a debt may still be owed, especially whereas here, the tradelines do not include bankruptcy coding such as included in and/or discharged in bankruptcy, or the tradeline indicates there is a balance and/or past due balance owed on the account before or after the "charge-off."

57.    The national consumer reporting agencies specifically acknowledge that a "charge-off" generally means consumers are still legally responsible for paying the debt.

58.    According to Experian, creditors typically charge off accounts after they have been delinquent, *i.e.*, gone without any scheduled payments for six months, a charge-off does not mean your debt is forgiven, you are still legally responsible for repaying the outstanding amount.

59.    Notably, the other national consumer reporting agencies Equifax and Trans Union did not inaccurately report the Account like Experian.

60.     Comenity Bank/HSN furnished information to Defendant that indicated Plaintiff's debt was included or discharged in bankruptcy, and/or had a zero-dollar balance after the bankruptcy discharge, but Defendant rejected or otherwise overrode the data it received.

61.     Alternatively, Defendant knew from past experiences that Comenity Bank/HSN furnished inaccurate information regarding discharged debts or, has historically failed to employ reasonable procedures to ensure it properly updates consumer debts after a Chapter 7 Bankruptcy is discharged.

62.     Nevertheless, Defendant blindly relied on the information provided by Comenity Bank/HSN even though this information conflicted with or was contradicted by information contained in Defendant's records, as well as Defendant's knowledge regarding Plaintiff's bankruptcy and discharge.

63.     Defendant's reliance on the furnisher, Comenity Bank/HSN, was therefore unreasonable.

64.     Defendant inaccurately reported that Plaintiff owed a balance that Plaintiff did not actually owe, and also reported inaccurate account statuses and/or payment histories.

65.     Defendant inaccurately reported the Account as a "Charge-Off" with an owed and past due balance after the Account was discharged in Chapter 7 Bankruptcy and therefore had a zero-dollar balance.

66.     Defendant failed to indicate that the Account had a zero-dollar balance and/or was included/discharged in Chapter 7 Bankruptcy, and instead inaccurately reported this as a "Charge-Off" with a balance.

67.     Defendant's reporting of the Account is patently false/incorrect and therefore inaccurate.

68.     If not patently false/incorrect, Defendant's reporting of the Account is materially misleading and therefore inaccurate.

### *Plaintiff's Damages*

69.     After Plaintiff's bankruptcy discharge, Plaintiff applied for credit with Capital One and was approved at less than favorable rates and a $300 credit limit due to the inaccurate reporting of the Account by Defendant

70.     As a direct result of Defendant's inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

71.     Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish,

loss of sleep, reputational damage, humiliation, stress, anger, frustration, shock, embarrassment, violation of Plaintiff's right to privacy, and anxiety.

## V.    COUNT I
### Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b)

72.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

73.    The FCRA requires CRAs, like Defendant, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

74.    Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information pertaining to pre-bankruptcy debts after a consumer Plaintiff received a Discharge Order.

75.    Defendant independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily reported the same in Plaintiff's consumer reports.

76.    When Defendant procured and published Plaintiff's bankruptcy information, it had an obligation to ensure it followed reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

77.     Defendant knew or should have known that the effect of a Discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding. Defendant knew or should have known of its obligations under the FCRA, especially pertaining to reporting discharged debt with a zero-dollar balance.

78.     These obligations are well established by the plain language of the FCRA, in promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving Defendant from which Defendant is on notice of its unreasonable procedures concerning the reporting of discharged debts.

79.     Additionally, Defendant possesses or can easily obtain substantial written materials that detail CRA's duties and obligations under the FCRA, including those that apply when consumers file for Chapter 7 Bankruptcy.

80.     Despite knowledge of these legal obligations, Defendant willfully and consciously breached its known duties and deprived Plaintiff of Plaintiff's rights under the FCRA.

81.     In this case, Defendant inaccurately reported accounts that Defendant knew predated Plaintiff's Chapter 7 Bankruptcy, were included and discharged by Plaintiff's bankruptcy discharge.

82.     Defendant had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information it published in Plaintiff's consumer reports, including Plaintiff's bankruptcy case number, court, date of filing and date of discharge.

83.     Defendant is also on notice from other tradelines reported by Defendant that indicate Plaintiff's accounts were included in and discharged in bankruptcy.

84.     Defendant received notice of Plaintiff's bankruptcy discharge through public records, its own files, and information provided by data furnishers.

85.     Defendant knows that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

86.     Yet in this case, Defendant reported the Account, which predated Plaintiff's bankruptcy, as a "Charge-Off" account with a balance without any indication the account was discharged or had a zero balance.

87.     Defendant violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report.

88.   Defendant also violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendant knew or should have known the information Defendant is reporting is inaccurate, and/or otherwise contradicted by information known by Defendant, reported to Defendant, and/or reasonably available to Defendant.

89.   Defendant's violations of 15 U.S.C. § 1681e(b) were willful.

90.   Alternatively, Defendant's violations of 15 U.S.C. § 1681e(b) were negligent.

91.   Defendant's inaccurate reporting damaged Plaintiff's creditworthiness.

92.   Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Defendant inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

93.   Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, loss of sleep, frustration, shock, embarrassment, and anxiety.

94.   Defendant is a direct and proximate cause of Plaintiff's damages.

95.     Defendant is a substantial factor in Plaintiff's damages.

96.     Therefore, Defendant is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq.*

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant for the following:

(a)     Declaratory judgment that Defendant violated the FCRA, 15 U.S.C. § 1681e(b);

(b)     An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c)     An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d)     An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e)     Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f)      Such other and further relief as this Honorable Court may deem just

and proper, including any applicable pre-judgment and post-judgment

interest, and/or declaratory relief.

## VII.   <u>JURY DEMAND</u>

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 16th day of February 2022,

> By: *<u>/s/Jenna Dakroub</u>*
> Jenna Dakroub, GA: 385021
> **PRICE LAW GROUP, APC**
> 8245 N. 85th Way
> Scottsdale, AZ 85258
> Telephone: (818) 600-5513
> Fax: (818) 600-5413
> E: jenna@pricelawgroup.com
> *Attorneys for Plaintiff,*
> *Timothy Mitchell*